[Civ. No. 14014.   Second Dist., Div. One.   Sept. 30, 1943.]

VIRGINIA BROWNE, Appellant, v. HALE BROWNE, Respondent.

Jones & Hoyt, George A. Elstein and Mitchell S. Meyberg for Appellant.

David C. Marcus for Respondent.

YORK, P. J.—This is an appeal from a minute order dated September 1, 1942, modifying a judgment of annulment of marriage respecting the custody of minor children.

Said judgment of annulment was entered on December 11, 1941, *nunc pro tunc,* as of October 10, 1941, awarding the custody of said children, aged 2 and 3 years, to the plaintiff mother, provided ''she shall and she is hereby ordered to move forthwith from the home of her mother, Mrs. Beulah Strickland Ingram, and establish a separate home for said children away from said Mrs. Beulah Strickland Ingram, so that said children shall not be in the custody or under the influence of said Beulah Strickland Ingram.'' The defendant father was ordered to pay $6.25 per week for the care and support of each child, and was awarded all reasonable rights of visitation with said children.

On April 21, 1942, said judgment was modified permitting plaintiff mother ''to reside with the maternal grandmother and the children at the residence of the maternal grandmother, Beulah Strickland, until the further order of the court. The matter of the modification is continued to September 1, 1942.''

On July 15, 1942, an order to show cause *in re* contempt issued at the instance of defendant father directed against plaintiff mother, apparently because of the maternal grandmother's refusal to permit the father to take the children when he called for them at the beginning of a weekend in June.

At the hearing on September 1, 1942, on the motion of plaintiff *in re* modification and for attorney's fees, and on the motion of defendant for modification and on the order to show cause *in re* contempt, the court discharged the order to show cause and placed the children in the custody of a neutral

third party, one Sam Berznak and his wife, and continued the matter of custody to March 1, 1943. Sam Berznak appears to be a friend of defendant and the order of modification was made with the latter's approval and consent.

The material facts adduced from the evidence presented at the hearing of September 1, 1942, appear to be as follows: From the entry of the judgment of annulment on October 10, 1941, prohibiting her from residing with her mother, until April 21, 1942, when the judgment was modified permitting her to do so, appellant and her two minor children lived in several nursery homes; that during this period both children fell ill, one with measles which terminated in pneumonia, and it became necessary to place them in the Children's Hospital where they were operated upon for mastoiditis. In explanation of her action in refusing to permit respondent father to take the children during a weekend in June, the maternal grandmother testified that the children had only recently returned from the hospital, were frail and needed care, and appellant gave as her reason for her absence from her children for a period of two months, the fact that she was boarding in Los Angeles and was going to school studying "key punch and switchboard" in order to prepare herself to take care of and support her children. It also appears that the maternal grandmother had provided a home for her daughter and the two children from the time the younger was six months old, except for the six month period when she was prohibited from doing so by the order of October 10, 1941. At the hearing of September 1st it was developed that the grandmother was employed and hired a 21-year old girl named Irene to care for one child at a wage of $40 per month, and that the other child upon the advice of a physician had been taken to Banning to recuperate from the mastoiditis operation, and that the grandmother was paying $40 a month for his maintenance there, she testifying that it cost her $140 per month for the care of the children and their maintenance in her home, in excess of the $12.50 per week furnished by respondent for their support.

At the hearing when the court took the custody of the children from the mother and grandmother, and placed them in the custody of Sam Berznak, he made the following comments:

"I do not think the arrangement has been very successful . . . about having the children out there. I can understand the almost fierce affection that the grandmother has for these

children, but I do not think that it is a good thing for the children and I do not think it is a good thing for the parties here. I dislike very much to take the two children away from their parents, but when the mother has not been there for a couple of months, and the mother testifies she is not able to take care of the children . . . we have continued this matter from time to time and I am satisfied it is only going to lead to strife and trouble. I dislike to take the children away from the grandmother, but I do not think it is going to lead to any happiness of these children or the welfare of the children when a grandmother tells a parent to get out and keep out and so forth, because he makes some remark about the children, which a man might do, maybe in anger, and maybe in haste. . . . Well, I am going to make an order here and then give everybody a chance to try. These children do not go to school; they are not old enough for school yet, and this young man here impresses me as being a pretty decent sort of a fellow, and I think I am going to modify the order continuing the matter for a period of six months, to Department I of the Superior Court, at which time the mother can come up again. . . . I would not put anybody's children in those professional neutral homes, because the atmosphere in them is not good at all. Here is a man (Berznak) with a little girl, and it is not going to hurt anybody in this case for a period of six months to do without the children. . . . I think I am going to make the order that the custody of the children be taken from the mother and the grandmother, and be given to a neutral party, namely Sam Berznak and his wife, whose address is 114 North Everett, Glendale, and the mother of the children shall have the right to have the children on every other Sunday. . . . The father is ordered to support the children. The payments which were heretofore directed to be made to the wife for the support of the children are now discontinued and the whole matter is continued . . . (to) March 1st, 1943, at 9:00 o'clock in the morning, in Department I of this court. . . . (Addressing Mr. Berznak) the responsibility for the comfort and care and peace of mind of these children is now with you, and if either the father or the mother cares to see them, and in the judgment of you and your wife, they can see them without trouble, why you can make such arrangements as you desire.''

▆ Appellant mother urges error on the part of the trial court in taking away from her the custody of her children in the absence of either evidence or findings that she is not a fit and proper person to have such care and custody.

In the judgment of annulment entered December 11, 1941, *nunc pro tunc* as of October 10, 1941, the court found that "each of the parties is a fit and proper person to have the custody and care of the children of said parties, viz: Hale Robert Browne, age 3 years, and Dennis Orman Browne, age 2. But due to their extreme youth, their custody is awarded to the mother. . . ."

In said judgment of annulment and in the two orders modifying the same, the matter of the custody of the children was left open and in each instance continued until a later date, and in the absence of a finding to the contrary in either of the orders referred to, it must be presumed that the trial court's conclusion as to the fitness of the parents remained unchanged. The comments of the trial judge hereinbefore set out indicate his concern for the welfare and best interests of the children, and in changing their custody he was doubtless influenced by the fact that appellant at that time was not in a position to maintain them without the assistance of the children's maternal grandmother.

In the case of *Williams* v. *Williams*, 13 Cal.App.2d 433, 434 [56 P.2d 1253], after the final decree of divorce and the subsequent remarriage of the husband, he instituted a proceeding for modification of the custodial order, asking that the son be placed in his custody and control. This the court refused to do, leaving the child in nominal custody of the wife but requiring that said child be kept in a private school, with right of visitation accorded each parent. Upon appeal from the order, the husband suggested that it was an abuse of discretion on the part of the trial judge. It was there stated by the court: " No such abuse is apparent. The whole matter is committed to the wise discretion of the judge who hears the testimony, sees the witnesses, examines the parties themselves and who is, in the very nature of things, in a position to determine what is for the best welfare of the child."

"The code has not provided explicit rules in regard to the exercise of the trial court's discretion in awarding the custody of the children. It is manifest that the Legislature intended to confide to trial courts a very extensive discretion in this respect, with a view to the conservation of the best interests of such minors, and its conclusion will not be set aside in the absence of a clear abuse of that discretion. And this rule is adhered to, though at the same time it is declared that 'naturally and presumptively the mother is entitled to the custody

and care of minor children of tender years.' The controlling and paramount consideration is the children's welfare. And this the trial court must decide from all the facts of which it has obtained knowledge in a competent manner. . . . ██

If there is substantial evidence in the record to support a rational inference that the order is for the best interests of the child, and such evidence does not appear incredible, and there is nothing to impeach the fairness or good faith of the decision, it would be an excess of appellate authority to disturb the determination of the trial court." (9 Cal.Jur. 790, sec. 133, and authorities there cited.)

██ Pending this appeal, the trial court was without jurisdiction to change or modify the judgment as to custody of the minor children on March 1, 1943, the date to which the matter was continued. (*Vosburg* v. *Vosburg*, 137 Cal. 493 [70 P. 473].) However, now that a year has elapsed since the order appealed from was made, a change of circumstances may exist which will support a further modification of the judgment respecting the custody of the children here involved.

For the reasons stated, the order appealed from is affirmed.

Doran, J., and White, J., concurred.

A petition for a rehearing was denied October 14, 1943, and appellant's petition for a hearing by the Supreme Court was denied November 22, 1943.